Clifton HARMON, Sr., Appellant,

v.

Louisiana Mose HARMON, Individually and in the Interest of Minor Children, Appellee.

No. B14–93–00398–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 12, 1994.

Rehearing Denied July 14, 1994.

Ernest L. Sample, Houston, for appellant.

Andrew P. Mercurio, Houston, for appellee.

Before SEARS, ELLIS and WILLIAM E. JUNNELL (Assigned), JJ.

## OPINION

WILLIAM E. JUNELL, Justice (Retired).

This is a writ-of-error appeal of a no-answer default divorce judgment. Clifton Harmon complains of the lack of notice of the trial setting, the failure of the trial court to make fact findings, violations of the child-support guidelines, the lack of trial court jurisdiction, and the trial court's overruling of Clifton's motion for new trial without conducting a hearing. We affirm.

On January 30, 1977, Clifton and Louisiana were married. They had three children. On or about September 15, 1983, they separated. On May 4, 1992, Louisiana filed for divorce in Harris County. On June 24, 1992, she filed an amended petition. On July 16, 1992, Louisiana served process on Clifton in Beaumont, Jefferson County, Texas. Process included a citation, her first amended petition, motion for temporary orders, and notice of hearing on temporary orders. Clifton's answer was due on August 10, but he failed to answer.

On August 14, 1992, before a family-law master, the scheduled hearing on temporary orders became a default hearing, and Louisiana won a default judgment. The master announced from the bench that the divorce was granted and appointed Louisiana sole managing conservator of the three children. The master also awarded Louisiana, *inter alia*, $400 per month child support, a 1982 Cadillac two-door, $750 in attorney's fees, and $197 in court costs.

On September 18, 1992, the referring court approved the judgment and signed the divorce decree.

On October 13, 1992, Clifton filed a motion for new trial, which was overruled by operation of law. Clifton missed the deadline for

an ordinary appeal, but, on March 8, 1993, filed a petition for writ of error. We affirm.

To prevail in this writ-of-error proceeding, Clifton must show that (1) his application for writ of error was filed within six months of the date of judgment; (2) he was a party to the suit; (3) he did not participate at trial; and (4) the errors he complains of are apparent from the face of the record. *Thorp v. Adair & Myers*, 809 S.W.2d 306, 307 (Tex. App.—Houston [14th Dist.] 1991, no writ); TEX.R.APP.P. 45. It was undisputed that Clifton met the first three requirements. Therefore, we need only determine whether Clifton has identified reversible error apparent on the face of the record.

In point of error one, Clifton complains that the case was tried without notice in violation of Rule 245, which requires not less than 45–days notice of a first trial setting.

> The Court may set *contested* cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial.... *Noncontested* cases may be tried or disposed of at any time whether set or not, and may be set at any time for any other time.
>
> &ast; &ast; &ast; &ast; &ast; &ast;

TEX.R.CIV.P. 245 (emphasis added).

■ On July 16, 1992, Louisiana served Clifton with a citation, her first amended petition, motion for temporary orders, and notice of hearing on temporary orders. These documents and return of service are a matter of record, and we find no error apparent on their face. The citation included the standard default notice:

> YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of 20 days after you were served this citation and petition, *a default judgment may be taken against you.*

(Emphasis added.)

Since Clifton did not answer, this was a *noncontested* case, and Clifton was vulnerable to a default judgment. Clifton was not entitled notice of a trial setting. *Compare*

*Clements v. Barnes*, 822 S.W.2d 658, 660 (Tex.App.—Corpus Christi 1992), *rev'd on other grounds*, 834 S.W.2d 45 (1992) (a defendant who did not make an appearance was not entitled to advance notice of a default hearing) *with Langdale v. Villamil*, 813 S.W.2d 187, 191 (Tex.App.—Houston [14th Dist.] 1991, no writ) (once defendant has made appearance in cause he is entitled to notice of trial setting) *and Schulz v. Schulz*, 726 S.W.2d 256, 258 (Tex.App.—Austin 1987, no writ) (wife's answer precluded trial without Rule 245 notice). We also note that Clifton, who was not a party "participating in the hearing," was not entitled to notice of the master's report or notice of right to appeal to the referring court. *See* TEX. GOV'T CODE ANN. § 54.010 (Vernon 1988).

Clifton contends that the case was "contested" until the 60–day waiting period required by TEX.FAM.CODE ANN. § 3.60 (Vernon 1993) had elapsed. We disagree.

Section 3.60 provides:

> A divorce shall not be granted until at least 60 days have elapsed since the day the suit was filed. However, a decree entered in violation of this section is not subject to collateral attack.

*Id.*

It is true that the 60–day statutory waiting period precluded a divorce judgment, default or otherwise, from being rendered before August 24, 1992. But this does not mean that the case was "contested" for purposes of Rule 245. The case became *non*contested when Clifton failed to answer.

■ We note that the judgment of divorce was not rendered until after the 60–day waiting period had run. The family-law master orally "granted" the divorce on August 14, 1992. However, a master does not have the power to render judgment. *Stein v. Stein*, 868 S.W.2d 902, 904 (Tex.App.—Houston [14th Dist.] 1994, no writ). The master only recommends the judgment to be made, and the referring court is free to adopt or reject the recommendations of the master. *Id.* "[T]he findings and recommendations of the master become the decree or order of the referring court only on the referring court's

signing an order or decree conforming to the master's report." TEX. GOV'T CODE ANN. § 54.013 (Vernon 1988). Therefore, the divorce judgment was not *rendered* until the referring court signed the divorce decree on September 18, 1992, more than 60 days after the June 24 filing of Louisiana's amended petition. We overrule point one.

In point two, Clifton argues that the trial court failed to make findings of fact as required by § 14.057(a) and (b) of the Texas Family Code.

■ TEX.FAM.CODE ANN. § 14.057(a) (Vernon Supp.1994) states in pertinent part:

> Without regard to Rules 296 through 299, Texas Rules of Civil Procedure, in any suit affecting the parent-child relationship ... *in which child support is contested* and the amount of support is set or modified by the court, on written request made or filed with the court *not later than 10 days after the date of the hearing* or an oral request made in open court during the hearing, the court shall state the following in the child support order: [findings relating to net resources of payor and application of child support guidelines].

*Id.* (emphasis added).

Clifton did not answer the lawsuit and so child support was not *contested.* He did not appear at the August 14 default hearing to make an oral request for findings. Furthermore, he did not request findings of fact until October 13 when he filed his motion for new trial (more than ten days after the hearing). Clifton was not entitled to findings of fact under § 14.057(a).

■ Nor was he entitled to findings under § 14.057(b), which provides:

> In any suit affecting the parent-child relationship ... in which the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines contained in Section 14.055 of this code, the court shall find that the application of the child support guidelines would be unjust or inappropriate and shall state the following in the child support order: [findings relating to net re-

sources of payor and application of child support guidelines].

*Id.* § 14.057(b).

The child support awarded to Louisiana did not materially vary from the guidelines. Based on evidence presented at the default hearing, the master concluded that Clifton had monthly net resources of $1,350 and three children to support. Under these facts, the guidelines called for child support of 30% of net resources or $405. Louisiana was awarded $400, $5 less than the child-support guidelines.

■ Finally, Clifton would not be entitled to findings of fact under Rule 296 because he did not request findings "within twenty days after judgment [was] signed." TEX.R.CIV.P. 296. We overrule point two.

In point four, Clifton maintains that the trial court lacked jurisdiction to enter judgment because Louisiana, whom he claims is a resident of the State of Louisiana, elected to sue him in a county other than the county of his residence, contrary to § 3.21 of the Texas Family Code. He contends that there was no evidence that Louisiana lived in Texas or Harris County for the respective periods of time required to give the trial court jurisdiction.

Section 3.21 provides:

> No suit for divorce may be maintained unless at the time suit is filed the petitioner or the respondent has been a domiciliary of this state for the preceding six-month period and a resident of the county in which the suit is filed for the preceding ninety-day period.

TEX.FAM.CODE ANN. § 3.21 (Vernon 1993).

■ We first reframe the issue. Section § 3.21's residency requirements are not *jurisdictional.* Rather, they establish the qualifications of the parties necessary for a plaintiff to bring suit. As such, a judgment based on false testimony of residency would not be void and subject to collateral attack, but merely voidable by direct appeal or suitable equitable proceeding. *Buffaloe v. Buffaloe,* 210 S.W.2d 429, 430 (Tex.Civ.App.—Dallas 1948, writ dism'd).

As a general rule, no evidence is required to support a default judgment. A defendant's failure to appear or answer is taken as an admission of the allegations in a plaintiff's petition. *Morris v. Morris,* 717 S.W.2d 189, 190 (Tex.App.—Austin 1986, no writ). Had Clifton answered, he could have put Louisiana to her proof. *See Stoner v. Thompson,* 578 S.W.2d 679, 682 (Tex.1979). However, Clifton did not answer and therefore admitted Louisiana's pleaded facts. Louisiana pleaded that she and Clifton were domiciliaries of Texas for the preceding fifteen-year period and that she had been a resident of Harris County, for the preceding ninety-day period. Louisiana filed suit in Harris County, and the requirements of § 3.21 were met. We overrule point four.

In point five, Clifton complains that the trial court erred in overruling his motion for new trial without setting it for a hearing. In point three, he contends that the order for child support takes one-hundred percent of his "disposable earnings" in violation of guidelines established in §§ 14.051 through 14.055 of the Texas Family Code. In essence, Clifton argues that the trial court allowed his motion for new trial to be overruled by operation of law without an evidentiary hearing and in spite of a meritorious defense.

The issue of whether the trial court erred in denying a motion for new trial is directed to the trial court's discretion. *Fluty v. Simmons Co.,* 835 S.W.2d 664, 666 (Tex.App.—Dallas 1992, no writ). We will not disturb the trial court's ruling absent an abuse of that discretion. *Id.*

First, we find that Clifton was not entitled to an evidentiary hearing on his new-trial motion. Clifton's request for a hearing was embedded in the motion itself and mentioned in his transmittal letter to the District Clerk. But, as stated by the court in *Shamrock Roofing Supply, Inc. v. Mercantile Nat'l Bank,* 703 S.W.2d 356 (Tex.App.—Dallas 1985, no writ):

> We are unwilling to hold that an abuse of discretion occurs when the defaulting defendant fails to call his motion to the judge's attention and allows it to be overruled by operation of law. Trial judges

have a heavy load of trials and contested motions. They cannot be expected to examine *sua sponte* all papers filed in their courts. They must rely on counsel to see that motions are set for hearing.

*Id.* at 357–58; *see also Fluty, supra.*

The record is devoid of any attempt by Clifton to bring his motion to the attention of the trial court or set his motion for a hearing between the time he filed his motion and the time the motion was overruled by operation of law some six weeks later. In short, Clifton did not properly bring his motion and its embedded request for a hearing to the trial court's attention. We therefore find that the trial court did not abuse its discretion in not holding an evidentiary hearing on Clifton's motion.

Next, we find that Clifton motion and supporting affidavits did not set up a meritorious defense nor establish any of the other elements required to set aside the default judgment.

An equitable motion to set aside a default judgment and grant a new trial must: (1) set up a meritorious defense; (2) establish that his failure to answer was not intentional or the result of conscious indifference, but rather, was due to mistake or accident; and (3) show that the opponent would not suffer hardship or undue delay if the motion were granted. *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

None of Clifton's affidavits or medical records filed in support of his motion for new trial were properly authenticated: (1) the first of two personal affidavits by Clifton lacked a notary seal or stamp; (2) the second of Clifton's affidavits indicated that it was signed on December 8, 1992, but the jurat stated that the affidavit was sworn to and subscribed on December 7 (in any event, after the motion had already been overruled by operation of law); (3) an affidavit by one Ray Tarrar had no notary seal or stamp and was dated February 17, 1993, well after the motion had been overruled; and (4) medical records relevant to injuries sustained by Clifton in a 1988 auto accident were not verified by affidavit. The trial court had no compe-

tent evidence before it upon which to establish any of the required *Craddock* elements. Therefore, we cannot say that he abused his discretion in not setting aside the default judgment.

Finally, even if we overlooked the defects in *Clifton's* affidavits, we would still find that his motion failed the *Craddock* test. The motion and affidavits arguably established a meritorious defense to the amount of the award of child support; he alleged that he is totally disabled, has three other children in his care, and does not have the net resources alleged by Louisiana. Nevertheless, the motion fails to demonstrate that his failure to answer was not intentional or due to conscious indifference. Nor does the motion offer to pay Louisiana's expenses for obtaining the default judgment or in any other way show that Louisiana will not suffer undue harm or delay. We overrule points three and five.

Finding no error, we affirm the judgment below.